

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00844-CV

**IN THE INTEREST OF N.R.V.**, A.M.A.F. and I.I.F., Children

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2013-3094-DC
The Honorable Cathy Morris, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  May 13, 2015

AFFIRMED

Heather appeals the trial court's termination of her parental rights regarding N.R.V., A.M.A.F. and I.I.F.[1] She argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her rights was in the children's best interest. We affirm.

### BACKGROUND

In April 2013, the Department of Family and Protective Services removed Heather's children from her because of a report from I.I.F.'s school that she had a pattern of bruises on her back. Heather was prosecuted and convicted of causing serious injury to a child. The Department filed a petition seeking to terminate the parental rights of Heather and her children's fathers. The

---

[1] To protect the identity of the minor children, we refer to the children's parents by their first names and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

Department sought and received temporary managing conservatorship, and the children were placed in foster care. After trial, the trial court terminated the rights of the parents, and Heather now appeals.

## STANDARDS OF REVIEW & APPLICABLE LAW

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.*

When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent–child relationship is a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d at 684 (internal citation omitted). However, a factfinder may measure a parent's future conduct by his or her past conduct in making the best-interest determination. *Id.*

### EVIDENCE SUPPORTING THE TRIAL COURT'S BEST-INTEREST FINDING

Heather does not challenge the grounds for termination found by the trial court, including her failure to complete her court-ordered family service plan, knowingly endangering her children,

and her criminal conviction for causing serious injury to a child. The evidence supporting those findings was that Heather had used a hanger to swat I.I.F. on the back numerous times, leaving multiple bruises, and that she would "beat" the children with a hanger "whenever they did something wrong." N.R.V.'s foster mom testified he told her that Heather had hit him with a belt, bruising his genitals. The trial court reasonably could have credited this evidence as supporting its best-interest finding. *See In re O.N.H.*, 401 S.W.3d at 684.

There was testimony that the two younger children desired to live with a paternal uncle in Nebraska and the oldest child wanted to continue to reside with his foster family. Although Heather testified N.R.V. was "begging to come home" and that the children "obviously" miss her, the trial court reasonably could have credited the contrary testimony and resolved this disputed fact in favor of its finding. *See In re J.F.C.*, 96 S.W.3d at 266.

Marisela Sanchez, a CPS investigator, described the condition of Heather's home where the children were living. She testified Heather lived in a two bedroom apartment with a relative, and they had two dogs, five puppies, and two cats "roaming around." Sanchez testified she saw trash, empty beer cans, and dirty clothes all over the floor. She also testified the bathroom was incredibly dirty and emitted a foul smell. Sanchez mentioned a referral to the Department in 2012 and that the Department found Heather had no electricity and no water in her home. Heather testified about a prior referral to the Department because her house was unsanitary and not very well kept. She admitted knowing it was not a safe environment for the children. The trial court reasonably could have credited this evidence as supporting its finding. *See In re J.F.C.*, 96 S.W.3d at 266.

Heather testified she had a fourth child who was older than the three children in this case. She admitted that when N.R.V. (her second child) was born, she "couldn't support both children, and the father was abusive to [her]." She stated "the only way that [the father] would leave us

alone was if he [or his mother] got to raise her." The trial court reasonably could have credited this evidence as supporting its finding. *See In re J.F.C.*, 96 S.W.3d at 266.

Heather admitted she tested positive for methamphetamines in July and August of 2013. Although she denied using drugs and explained her positive results were from inhaling fumes from a hotel meth lab, the trial court reasonably could have disbelieved her explanation and resolved this disputed fact in favor of its finding. *See id.*; *T.A. v. Tex. Dept. of Family & Protective Servs.*, 410 S.W.3d 884, 889 (Tex. App.—El Paso 2013, no pet.) (holding evidence including positive drug test for methamphetamine supported trial court's best-interest finding).

There was evidence that Heather had been arrested for driving while intoxicated and, on another occasion, for failing to pay child support. She stated she was placed on probation for causing bodily injury to I.I.F., and admitted she violated conditions of her probation by failing to make an appointment. She stated that, as a result, she spent two months in jail during the pendency of the trial court proceedings. The trial court reasonably could have credited this evidence as supporting its finding. *See In re J.F.C.*, 96 S.W.3d at 266; *In re D.M.*, 58 S.W.3d 801, 817 (Tex. App.—Fort Worth 2001, no pet.) (holding inability to maintain a lifestyle free from arrests and incarcerations is relevant to trial court's best-interest finding).

Heather argues the testimony of the children's therapist, Allison Staley, and the mother's therapist, Dr. Rachel Yates, "established that it was not in the children's best interest to terminate [Heather]'s parental rights." Specifically, Heather cites to Staley's testimony that she believed the children all wanted to see their mom. However, Staley admitted the children never told her with whom they wanted to reside. Heather also cites to Dr. Yates's testimony that the Department did not do enough to help Heather reunite with the children. Dr. Yates admitted, though, that she understood the Department required a parent to have "two more clean drug tests before they're allowed to see the kids again," and Heather did not satisfy that requirement. Staley's and Dr.

Yates's testimony did not preclude the trial court from reasonably forming a firm conviction or belief that termination was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266.

## CONCLUSION

Based on the evidence in the record, we hold the trial court reasonably could have formed a firm belief or conviction that termination of Heather's rights was in the children's best interest. We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice